DORIS W. KING, ADMINISTRATRIX OF THE ESTATE OF ROBERT ODELL KING, DECEASED, v. LOUIE E. BONARDI, JR., AND JOHN THOMAS BONARDI.

(Filed 4 May, 1966.)

**1. Trial § 21—**

On motion for compulsory nonsuit, plaintiff's evidence is to be taken as true and considered in the light most favorable to him, giving him the benefit of every fact and inference of fact reasonably deducible from the evidence, and defendant's evidence which tends to establish a different state of facts or impeach or contradict plaintiff's evidence is not to be considered.

**2. Same—**

Discrepancies in plaintiff's evidence do not warrant nonsuit.

**3. Automobiles § 49—**

Defendants' evidence that shortly before the accident in suit plaintiff's intestate who was a passenger in plaintiff's car, was intoxicated is not to be considered on the question of intestate's contributory negligence, since defendants' evidence in this respect tends to show another and different state of facts from that of plaintiff.

**4. Automobiles § 41p—**

The identity of the driver of a vehicle at the time of the accident may be established by circumstantial evidence, either alone or in combination with direct evidence.

**5. Same—**

Evidence tending to show that defendant drove up to a filling station and removed the keys from the ignition, intestate remaining in the vehicle, that defendant returned to the car and got in on the driver's side and drove off in a big hurry, and that the accident in suit occurred a few minutes thereafter, is sufficient to support an inference that defendant was operating the vehicle at the time of the accident.

**6. Automobiles § 41a—**

Negligence is not presumed from the mere fact of an accident, and evidence that the vehicle being driven by defendant left the road on a straight stretch of highway is alone insufficient to raise an inference of negligence, but is sufficient for that purpose in combination with evidence tending to show that the vehicle was being driven in a careless and reckless manner and at unlawful and excessive speed at the time.

**7. Same— Evidence that vehicle ran off road because of excessive speed and reckless driving takes issue of negligence to jury.**

Evidence that defendant driver ran off the highway on a straight stretch of road, with evidence of physical facts that the highway was wet with rain at the time, that after leaving the highway the vehicle traveled 294 feet across the yards of two residences, turned over several times, uprooted several pine trees about two inches in diameter before it came to rest, *is held* sufficient to permit an inference that the vehicle was being operated in a careless and reckless manner and at a dangerous and unlawful rate of speed under the circumstances, and that such acts of negligence were the proximate cause of the accident.

**8. Negligence § 21—**

The burden of proof on the issue of contributory negligence is upon defendant.

**9. Automobiles § 46.1—**

The refusal of the court to submit a separate issue as to whether defendant was the operator of the vehicle at the time of the accident will not be held for error when the court instructs the jury to the effect that in order to answer the issue of negligence in the affirmative they must find by the greater weight of the evidence that defendant was driving the vehicle at the time of the accident, the burden of proof being upon plaintiff.

MOORE, J., not sitting.

APPEAL by defendant John Thomas Bonardi from *Froneberger, J.,* December 1965 Special Civil Session of LEE.

Civil action to recover damages for the wrongful death of plaintiff's intestate.

The complaint alleges in substance: About 10 p.m. on 2 November 1962 his intestate was riding as a guest passenger on the right hand side of the front seat of an automobile owned by Louie E. Bonardi, Jr., and driven by John Thomas Bonardi, with the owner's consent, on U. S. Highway #421, which has a paved portion 20 feet wide. John Thomas Bonardi was negligent in the operation of the automobile in that (1) he operated it carelessly and heedlessly in willful and wanton disregard of the rights and safety of others, and without due caution and circumspection, and at a speed of more than 70 miles per hour, and in a manner so as to endanger persons and property; (2) he failed and neglected to keep the automobile

under proper and reasonable control; (3) he operated the automobile at a speed greater than was reasonable under the conditions then existing when the road was wet and slick; and (4) he drove the automobile from the main traveled portion of the highway at a high, dangerous and unlawful speed, which caused said automobile to overturn six times, thereby wrecking the automobile and killing his intestate. Such negligence of John Thomas Bonardi was the sole and proximate cause of the wrecking of the automobile and the death of plaintiff's intestate.

Defendants filed a joint answer denying that John Thomas Bonardi was driving the automobile at the time alleged, and denying any negligence on their part. As a further answer and defense, they allege in substance that if they were negligent in any respect in the operation of the automobile, then and in that event plaintiff's intestate was also negligent in voluntarily continuing to ride in defendants' automobile when he knew that the driver of defendants' automobile was under the influence of intoxicating liquor and that the automobile was being operated at a fast, dangerous and unlawful speed, and that such negligence on the part of plaintiff's intestate was a proximate cause of his own death, and is a bar to any recovery in this action.

Plaintiff and defendants offered evidence in support of the allegations in their pleadings. At the close of all the evidence the court allowed the motion of defendant Louie E. Bonardi, Jr., for a judgment of compulsory nonsuit, and denied a similar motion made by John Thomas Bonardi.

The following issues were submitted to the jury and answered as indicated:

"1. Was the plaintiff's intestate Robert Odell King killed as a result of the negligence of the defendant John Thomas Bonardi, as alleged in the complaint?
"Answer: Yes.
"2. If so, did the plaintiff's intestate Robert Odell King, by his own negligence, contribute to his own death, as alleged in the answer?
"Answer: No.
"3. What amount of damages, if any, is the plaintiff entitled to recover?
"Answer: $10,000.00."

From a judgment entered in accordance with the verdict, defendant John Thomas Bonardi appeals.

*Smith, Leach, Anderson & Dorsett by C. K. Brown, Jr., for defendant appellant John Thomas Bonardi.*

*Pittman, Staton & Betts by W. W. Staton for plaintiff appellee.*

PER CURIAM. Defendant John Thomas Bonardi assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

On a motion for judgment of compulsory nonsuit, plaintiff's evidence is to be taken as true, and considered in the light most favorable to him, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence. Plaintiff's evidence must be considered in the light of his allegations to the extent the evidence is supported by the allegations. Defendant's evidence which tends to impeach or contradict plaintiff's evidence is not to be considered. Discrepancies and contradictions in plaintiff's evidence do not justify a nonsuit, because they are for the jury to resolve. 4 Strong's N. C. Index, Trial, § 21; Supplement to Vol. 4, *ibid*, § 21.

Considering plaintiff's evidence according to the rule, it tends to show the following facts: Between 9 and 10 p.m. on 2 November 1962 defendant John Thomas Bonardi drove a station wagon owned by his brother, Louie E. Bonardi, Jr., to the Jonesboro Drive-In Grill in Jonesboro, and parked it close to the gas pump, headed out towards Main Street, which street is U. S. Highway #421. This grill is located on U. S. Highway #421, and is west of the scene where the wrecked station wagon was found. Plaintiff's intestate was a passenger in the station wagon. It was drizzling rain. John Thomas Bonardi got out of the station wagon, and went into the rest room in the grill. Plaintiff's intestate stayed in the station wagon. Bonardi stayed inside the grill two or three minutes, went to the station wagon in a "pretty big hurry," got in the station wagon on the driver's side, and left in a big hurry. When he left, plaintiff's intestate was on his right as a passenger. When he drove out of the driveway of the grill, his tires were squealing. When the station wagon crossed the railroad tracks about 45 or 50 feet from the grill, it was going 50 or 55 miles an hour, and the back of the car jumped down and up. About two or three blocks from the railroad tracks is a Sinclair station; when the station wagon passed this Sinclair station, it was still picking up speed, and was headed towards Shallow Well Church. A little bit later an ambulance turned down Main Street going in the direction of Shallow Well Church.

Bobby William Baker, a witness for plaintiff, on the night in question was working at the Jonesboro Drive-In Grill, and testified to the effect that he saw John Thomas Bonardi drive the station

KING v. BONARDI.

wagon up to the grill, and drive it away. On cross-examination he testified:

"When they stopped Johnny Bonardi turned the ignition off and got out. He went around the back of the car and went in the front door of the grill. I was standing there all this time and I saw him. I had no conversation with him. As to whether I observed anything about it, I am not a doctor or anything like that. He might have been drinking. He acted something like it.

"I observed the way he walked. He just walked like somebody is drunk. I did not have any conversation with him. I didn't speak to him at all. He walked by me. He did not speak to me. He walked on into the grill. After he got in the grill he might have straightened up some then. There is a booth on each side of the door in the grill. I didn't get in front of him close enough to smell any alcohol on his breath. I didn't see his facial appearance, his eyes or anything of that nature.

\*    \*    \*

"I didn't observe anything about Bobby King. I did look at him. I didn't form any impression or have any opinion about his condition that night."

Jerry Baker, a witness for plaintiff, testified in effect that on the night in question he saw John Thomas Bonardi drive the station wagon away from the Jonesboro Drive-In Grill, and saw a passenger on the front seat with his head slumped down against the window. He testified:

"I saw the car when it first started off. It started off pretty fast. The way it started off — I know when a man is sober and not sober — I was trying to tell in what manner he drove the car. I just said it was like a drunk would drive a car. It started off faster than any sober person would start off."

Traveling east on U. S. Highway #421, Mary C. Underwood lives on the right of the highway about 1.8 miles east of the Jonesboro Drive-In Grill. To the west of her home on the same side of the highway is Mrs. Wade Coley's home, which is about 60 feet from the paved portion of the highway. West of the Coley home on the same side of the highway is Shallow Well Church manse. The paved portion of the highway at this place is 20 feet wide. About 10 p.m. on the night in question Mary C. Underwood heard a noise like a roaring and then an explosion. She went outside. She saw the body of John Thomas Bonardi three or four feet from her bedroom window and about 40 or 50 feet east of where the car stopped. She saw

the body of Bobby King lying in the ditch to the right of the driveway. She called a patrolman and asked him to send an ambulance, and he said he would.

Bobby Price, a member of the State Highway Patrol, was a witness for plaintiff. When he arrived at the scene of the wreck about 10:15 or 10:20 p.m., the bodies of King and Bonardi had been removed. The wrecked station wagon had not been moved when he arrived. He gave testimony in substance as follows: The station wagon was torn all to pieces; the right rear door was torn off. It had dirt or mud on its top. It was up beside the Coley house. About two feet of it was on the east side of the Coley house. The station wagon was headed south. The station wagon was on its wheels. It had a flat tire. He testified in detail as to tire marks, as to the ground being very wet, and as to dug-out places where the tire tracks were. The dug-out places were "like a heavy object struck the ground." The testimony of the State patrolman would permit a jury to find that the station wagon left the highway on a straight stretch of road, which was wet with rain, west of Shallow Well Church manse, traveled 294 feet across the yards of two residences, turned over several times, uprooted several small pine trees as much as two inches in diameter in the yard of the Coley house, and came to rest up beside the east side of the Coley house headed south.

Counsel for plaintiff and defendants stipulated that the speed limit at the scene of the wreck was 55 miles an hour.

Defendants offered evidence tending to show that a short time before the wreck of the station wagon Bobby King and John Thomas Bonardi were intoxicated. This evidence tends to establish another and different state of facts from the evidence offered by plaintiff, or tends to contradict or impeach the evidence presented by plaintiff, and in ruling upon appellant's motion for judgment of compulsory nonsuit it is our duty to ignore it. *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307.

Dr. James H. Byerly, who practices medicine in Sanford, saw plaintiff's intestate in the Lee County Hospital about 10:30 or 11 p.m. on the night in question. He was dead when he saw him. He examined him, and in his opinion the cause of his death was a fractured skull. On the same night Dr. M. C. Covington, who practices medicine in Sanford, saw John Thomas Bonardi lying on a stretcher and unconscious in the emergency room of the same hospital.

Appellant contends that his motion for judgment of compulsory nonsuit should be allowed for the reason that plaintiff has no evidence as to who was driving the station wagon at the time of the wreck, and no evidence as to the negligence of the driver, whoever he was, and further that if his motion for judgment of compulsory

nonsuit is not allowed on these grounds, then it should be allowed on the ground that plaintiff's evidence shows her intestate was guilty of contributory negligence as a matter of law in remaining in the station wagon when he knew John Thomas Bonardi was intoxicated. Appellant's contentions are untenable.

Circumstantial evidence, either alone or in combination with direct evidence, is sufficient to establish the crucial fact here as to who was driving the station wagon when it overturned. *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492, and cases cited. "Evidence of actionable negligence need not be direct and positive. Circumstantial evidence is sufficient, either alone or in combination with direct evidence." *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411.

Negligence is not presumed from the mere fact that there has been an accident and injury. *Johns v. Day,* 257 N.C. 751, 127 S.E. 2d 543. What is said in *Yates v. Chappell,* 263 N.C. 461, 139 S.E. 2d 728, is relevant here:

> "The mere fact that a vehicle veers off the highway is not enough to give rise to an inference of negligence. [Citing authority.] But what occurred immediately prior to and at the moment of the impact may be established by circumstantial evidence, either alone or in combination with direct evidence. [Citing authority.] The physical facts at the scene of an accident, the violence of the impact, and the extent of damage may be such as to support inferences of negligence as to speed, reckless driving, control and lookout. [Citing authority.]"

Considering plaintiff's evidence, as we are required to do on a motion for judgment of compulsory nonsuit as above stated, it is sufficient to carry the case to the jury that John Thomas Bonardi was the driver of the station wagon at the time it wrecked, and the physical facts at the scene of the wreck and the extent of damage are sufficient to support inferences of negligence that the station wagon at the time it wrecked was being operated by Bonardi in a careless and reckless manner, at a high, dangerous and unlawful rate of speed which was greater than was reasonable under the conditions then existing when the road was wet and slick, and that Bonardi did not keep the station wagon under proper and reasonable control, and that such negligence of John Thomas Bonardi in the operation of the station wagon was a proximate cause of the death of plaintiff's intestate. *Bridges v. Graham, supra; Thomas v. Morgan,* 262 N.C. 292, 136 S.E. 2d 700; *Randall v. Rogers,* 262 N.C. 544, 138 S.E. 2d 248; *Yates v. Chappell, supra; Drumwright v. Wood,* 266 N.C. 198, 146 S.E. 2d 1.

The burden of proof on the issue of contributory negligence is upon defendant appellant. Nonsuit on the ground of contributory negligence should be allowed only when plaintiff's own evidence, taken in the light most favorable to him, so clearly establishes this defense of contributory negligence that no other reasonable inference or conclusion can be drawn therefrom. 3 Strong's N. C. Index, Negligence, § 26, p. 476. Nonsuit on the issue of contributory negligence should be denied when opposing inferences are permissible from plaintiff's evidence. *Wilson v. Camp*, 249 N.C. 754, 107 S.E. 2d 743; *Bell v. Maxwell*, 246 N.C. 257, 98 S.E. 2d 33. In our opinion, and we so hold, plaintiff has not proved herself out of court so as to be nonsuited on the issue of contributory negligence. *Lincoln v. R. R.*, 207 N.C. 787, 178 S.E. 601. The court was correct in denying appellant's motion for judgment of compulsory nonsuit.

Appellant assigns as error the trial court's refusal to submit an issue tendered by appellant as follows: "Was the defendant, John Thomas Bonardi, the operator of the 1960 Plymouth station wagon at the time the injuries were inflicted on Robert Odell King on November 2, 1962, as alleged in the complaint?" The court in its charge on the first issue submitted to the jury instructed the jury to the effect that to answer the first issue yes, the burden of proof was on plaintiff to satisfy the jury that appellant was the driver of the station wagon at the time it wrecked. This assignment of error is overruled.

Appellant's assignments of error to the admission of evidence have been examined and all are overruled, because the admission of the challenged evidence is not sufficiently prejudicial, if prejudicial at all, to disturb the verdict and judgment below.

Appellant has many assignments of error to the charge. After considering these assignments of error and after reading the charge as a whole, prejudicial error is not shown. All assignments of error to the charge are overruled.

The jury, under application of settled principles of law, resolved the issues of fact against appellant. All appellant's assignments of error have been examined and all are overruled. Neither reversible nor prejudicial error has been made to appear. The verdict and judgment will be upheld.

No error.

MOORE, J., not sitting.