537 F.2d 1252
 Eldred MOORE, Appellant,
v.
CAROLINA POWER AND LIGHT COMPANY et al., Appellees.
Eldred MOORE, Appellee,
v.
FLOYD B. McKISSICK ENTERPRISES, INC., Appellant,
and
Carolina Power and Light Company and Soul City Foundation,
Inc., Defendants.
Eldred MOORE, Appellee,
v.
CAROLINA POWER AND LIGHT COMPANY, Appellant,
and
Floyd B. McKissick Enterprises, Inc., and Soul City
Foundation, Inc., Defendants.
 Nos. 75-2065 to 75-2067.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 30, 1976.
Decided July 16, 1976.
 
 Eugene H. Phillips, Winston Salem, N.C., for Eldred Moore.
 Howard E. Manning, C. Woodrow Teague, Raleigh, N.C., Theaoseus T. Clayton, Warrenton, N.C. (Charles F. Blackburn, Henderson, N.C., Fred D. Poisson, Robert W. Sumner, Manning, Fulton & Skinner, Raleigh, N.C., Perry, Kittrell, Blackburn & Blackburn, Henderson, N.C., and Teague, Johnson, Patterson, Dilthey & Clay, Raleigh, N.C., on brief), for Carolina Power and Light Co., Floyd B. McKissick Enterprises, Inc., and Soul City Foundation, Inc.
 Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 This is a negligence case. Eldred Moore was injured when he came in contact with a wire carrying 13,200 volts of electricity. Moore was a summer worker at Soul City, North Carolina, helping to build a new city. He was hurt while repairing the roof of a building so that it could be used as a dormitory.
 
 
 2
 The jury found that his injury resulted from the negligence of Carolina Power & Light Co., which owned and maintained the electric wire; Floyd B. McKissick Enterprises, which owned the building; and Soul City Foundation, Moore's employer. The district court granted the defendants' motions for judgment notwithstanding the verdict on the ground that Moore was contributorily negligent as a matter of law. We reverse.
 
 
 3
 * No one presented any evidence of how the accident happened. Moore could not remember what took place after he climbed onto the roof, and no one else saw what occurred.
 
 
 4
 The evidence showed that Moore and his supervisor climbed onto the southern side of the roof to repair it and that his supervisor told him to go to the northwest corner, where most of the damage was. There were two wires, clearly visible to the supervisor, running over the northern part of the building, one about eight inches and the other about four feet above the peak of the roof near the area where Moore was told to work. Only the higher of the two was charged with electricity. As the supervisor began his own work, he saw Moore walking along the top of the roof toward the northern side. Less than five minutes later he saw the wire move, looked up, and saw Moore lying face down on the roof a few feet west of the peak. His body faced north and the wires were underneath him. There were burns on his chest, his left armpit, his left side, and his legs.
 
 
 5
 The defendants' theory of the case is that Moore walked into the wires because he did not see them. They say that failure to keep a proper lookout is negligence as a matter of law. It is, however, just as plausible to infer that Moore tried to stay safely away from the wires but remain close enough to do his work, and that he slipped on the slanted tin roof and fell over them. Or the jury might have decided that Moore reasonably assumed that the wires were not dangerous, because he testified that he did not recall being told that they were live.
 
 
 6
 Thus, the jury could properly have drawn inferences that support Moore's denial of any negligence. Alternatively, the jury may have thought the inference that Moore was contributorily negligent and the inference that he was not were equally likely. In that case, too, it properly would have found for Moore, since the defendant has the burden of proving contributory negligence. See Fed.R.Civ.P. 8(c); King v. Bonardi, 267 N.C. 221, 228, 148 S.E.2d 32 (1966). Because the jury could reasonably draw the inferences necessary to the plaintiff's case or could reasonably find the plaintiff's and defendants' inferences equally likely, the court erred in granting judgment n. o. v. See Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061, 1066 (4th Cir. 1969).
 
 II
 
 7
 McKissick Enterprises contends that even if Moore were not contributorily negligent, it should prevail because the district court erred in denying its motion for judgment n. o. v. on the ground that the evidence failed to establish its negligence. This argument lacks merit. A landowner must keep his buildings in reasonably safe condition and must warn business invitees like Moore of dangers that are not obvious. See Waters v. Harris, 250 N.C. 701, 704, 110 S.E.2d 283 (1959). The evidence showed that employees of McKissick Enterprises knew about the live wire, knew it was dangerous, and knew that inexperienced workers like Moore would be repairing the building. But they did nothing to remove the hazard or warn Moore of the danger. This evidence furnishes ample support for the jury's finding that it was negligent.
 
 III
 
 8
 McKissick Enterprises assigns as error the court's failure to give its requested instructions on active and passive negligence and on intervening and insulating negligence. It believes that even if its negligence is proven, it was only passively negligent, while Soul City Foundation and Carolina Power & Light were actively negligent. McKissick Enterprises also argues that the negligent acts of the power company and Soul City were intervening causes of the accident. The power company makes similar arguments. Indeed, it goes further and contends that the evidence does not support the jury's finding that its negligence was a proximate cause of the accident.
 
 
 9
 We reject these contentions. The evidence supports the jury's conclusion that the power company's negligence in maintaining its wire only four feet above the roof was a proximate cause of Moore's injuries.* Finally, passive negligence and intervening cause are defenses only if the active negligence or intervening cause is the "real, efficient" cause of the injury. See Powers v. Sternberg & Co., 213 N.C. 41, 43, 195 S.E. 88 (1938). Although the court did not use terms like active negligence and intervening cause, it adequately instructed the jury that it could not hold the property owner and the power company liable unless their negligence proximately caused the accident. In Riddle v. Artis, 243 N.C. 668, 91 S.E.2d 894 (1956), the court observed that since two or more proximate causes, originating from separate and distinct sources, may be responsible for an injury, an action may be brought against one or all of the wrongdoers. Continuing, the court said:
 
 
 10
 "It is immaterial how many new events or forces have been introduced if the original cause remains operative and in force. In order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it." 243 N.C. at 671, 91 S.E.2d at 896.
 
 
 11
 The judgment of the district court is affirmed in part and reversed in part, and the jury's verdict is reinstated.
 
 
 
 *
 A state law requires that power lines be kept eight feet above buildings. See Rule R8-26, North Carolina Utilities Commission, adopting U.S. Dept. of Commerce, Safety Rules for the Installation and Maintenance of Electric Supply and Communication Lines, at 69 (1966)