TOMMY HUGH RECTOR, ADMINISTRATOR OF THE ESTATE OF DONALD PERRY RECTOR, DECEASED, PLAINTIFF v. CLARENCE CLAUDE ROBERTS, IN-DIVIDUALLY, CLARENCE CLAUDE ROBERTS, ADMINISTRATOR OF THE ESTATE OF DONALD CLAUDE ROBERTS, DECEASED, AND JETER FORT-NER, ADMINISTRATOR OF THE ESTATE OF WILLIAM RALPH BALL, DE-CEASED, DEFENDANTS.

(Filed 28 April, 1965.)

**1. Pleadings § 29—**

Admissions in a pleading are judicial admissions binding on the party making them.

**2. Automobiles §§ 52, 55—**

Where the son is using the automobile provided by his father for family purposes and, being present as a passenger in the car, permits another to drive, the son is liable for the driver's negligence under the doctrine of agency and the father is liable therefor under the family purpose doctrine.

**3. Automobiles § 41a—**

Evidence tending to show that the wreck occurred immediately after a 9 degree curve to the driver's left, that the road was crooked and rough, that the vehicle was seen some 200 yards from the wreck being driven some 60 to 65 miles per hour, together with evidence of physical facts as to the condition of the vehicle after the wreck and that the passengers were thrown therefrom and fatally injured, *held* sufficient to be submitted to the jury on the issue of the negligence of the driver in driving at an unreasonable and imprudent speed in violation of G.S. 20-141(a).

**4. Automobiles § 38—**

Opinion evidence that the vehicle in question shortly before the accident was "going about 60 to 65" will not be held to be without probative force because the witness failed to use the phrase "miles per hour," it being apparent from the context that the witness was testifying the vehicle was traveling 60 to 65 miles per hour.

**6. Automobiles § 41p—**

Testimony that a named person was seen driving the car on five or more occasions during the four hours or so prior to the wreck, the last occasion being within a few minutes of the time of the accident, *held* sufficient to be submitted to the jury on the question of whether the named person was driving at the time of the accident.

APPEAL by plaintiff from *Pless, J.,* November 1964 Civil Session of MADISON.

Plaintiff brought this action to recover damages for the asserted negligent killing of his intestate, Donald Perry Rector (hereafter Rector). Plaintiff alleges: The persons named in the caption as administrators have been duly appointed to administer on the respective estates, as indicated in the caption. Rector, Donald Claude Roberts (hereafter Donald) and William Ralph Ball (hereafter Ball) were, on the evening of April 21 and the early morning hours of April 22, 1962, riding in a 1959 Chevrolet owned and maintained by Clarence Claude Roberts (hereafter Roberts) as a family purpose car. All three occupants sustained injuries resulting in death when the Chevrolet, because of negligent operation, ran off the highway and turned over. The vehicle, when it ran off the highway, was being driven by Ball. Donald had, with the knowledge of Roberts, taken the Chevrolet for use as a family purpose vehicle. Ball drove the vehicle at an unreasonable speed. He failed to maintain a proper lookout or to keep the vehicle under control.

Roberts, individually and as administrator, answered. He admitted all material allegations of the complaint, except those charging negligence in the operation of the automobile.

Fortner, administrator of Ball's estate, answered. He denied Ball was driving, and negligent operation by the driver. Upon the death of Fortner, defendant Wallin was named as administrator of Ball's estate. He was made a party defendant and adopted the answer filed by Fortner.

At the conclusion of plaintiff's evidence, defendants severally moved for nonsuit. The motions were allowed. Plaintiff excepted and appealed.

*Wade Hall for plaintiff appellant.*

*Van Winkle, Walton, Buck & Wall by O. E. Starnes, Jr., for defendant Roberts.*

*Williams, Williams & Morris by William C. Morris, Jr. and James F. Blue, III, for defendant Wallin.*

RODMAN, J. The appeal presents these questions: (1) Is the evidence sufficient to permit a finding that the negligence of the driver proximately caused Rector's death? If so, the court should not have allowed Roberts' motion to nonsuit. This is true because Roberts, by his answer, admitted the 1959 Chevrolet was maintained by him as a family purpose car, and was on the night in question being used for that purpose by Donald; Ball was operating the vehicle when the wreck occurred; Donald was an occupant of the vehicle at that time.

These judicial admissions sufficed as to Roberts and Donald's estate to establish the fact that Ball was the operator. *Vinson v. Smith,* 259 N.C. 95, 130 S.E. 2d 45; *Wilson v. Chandler,* 235 N.C. 373, 70 S.E. 2d 179. These admissions would impose liability on Roberts and on Donald's estate if Rector's death was caused by Ball's negligent operation. *Goss v. Williams,* 196 N.C. 213, 145 S.E. 169.

The wreck occurred about one or one and one-half miles south of Stines' Gulf and Madison Grill, located on opposite sides of the highway. The car was traveling south toward Marshall. The highway patrolman who went to the wreck in response to a telephone call testified, "The road from Stines' Gulf and the Madison Grill to where I found this car is very crooked, curvy, bumpy road. It is considered as open country." The operator of Stines' Gulf testified, "The road has quite a few curves in it." The Highway Commission had not posted signs establishing a maximum speed. A civil engineer who surveyed the road and the area where the wreck occurred testified that one traveling south, as the Chevrolet was, would, shortly before reaching the point where the wreck occurred, encounter a curve to the east, or the driver's left. Pictures taken of the scene of the wreck, used by several witnesses to explain their testimony, show an embankment to the left and a decline to the right. This embankment would effectively obstruct the view of vehicles in rounding the curve, which, as indicated by the map, has a curvature of nine degrees or more.

Ball, about 1:30 a.m., purchased gas at Stines' Gulf for use in the Chevrolet. It left, traveling north. A few minutes later, it was seen coming back, traveling in a southward direction. A witness testified, "At the time I observed it there, I had an opinion satisfactory to myself that it was doing about 60 or 65." Robinson's Esso station is about 200 yards north of the place where the wreck occurred. Water Brazil, a witness for the plaintiff, testified that he saw the wrecked vehicle pass Robinson's station headed in a northwardly direction about 1:50 a.m. About ten minutes later, it passed the station again, headed then in a southwardly direction. He testified, "I have an opinion satisfactory to myself that the car was going about 60 or 65 when I observed it." Within four or five minutes after the car passed, he closed the filling station and went to the scene of the wreck. The vehicle was turned over and on its right side. The top was crushed in so that it was pressing on the seats. Brazil observed three persons in the vehicle when it passed the filling station, but he was unable to identify anyone. When he arrived at the scene of the wreck, the automobile was approximately 15-20 feet from the highway in a depression. Ball's body was some 8-12 feet from the automobile. Rector, still breathing, was found some 9-10 feet from the wrecked automobile. Donald's body was found about 70

feet south of the wrecked vehicle. There were skid marks on the highway. The windshield was found on the highway.

Plaintiff relies on the evidence, as summarized above, to show unreasonable and unlawful speed. Our statute, G.S. 20-141(a), makes it a crime to operate a motor vehicle at a speed greater than reasonable and prudent under existing conditions. Subsection (b)4 of that section fixes a maximum speed of 55 miles per hour. If the Chevrolet was driven at a speed greater than 55 miles per hour, or faster than was reasonable and prudent under existing conditions, the operator was negligent. *Cassetta v. Compton,* 256 N.C. 71, 123 S.E. 2d 222; *Bridges v. Jackson,* 255 N.C. 333, 121 S.E. 2d 542; *Krider v. Martello,* 252 N.C. 474, 113 S.E. 2d 924. It is not contended that G.S. 20-141(b)5 has any application to the facts of this case. We think a jury would be justified in finding that the vehicle was, when wrecked, being operated at a speed of 60-65 *miles per hour.* We can not accept defendants' contention that the testimony, "the car was going about 60-65," has no probative value because the witness failed to add "miles per hour." We have no doubt the witness meant, and that everyone who heard the witness understood him to mean, that he estimated the speed of the vehicle at 60-65 *miles per hour.* The oral description of the road, supplemented by the photographs, stated to correctly depict the physical condition, would support a finding that the vehicle was being operated at an unreasonable and imprudent speed, contrary to the provisions of G.S. 20-141(a).

Plaintiff has offered evidence requiring the submission of an issue to determine the alleged actionable negligence of the operator of the Chevrolet. If that question be answered in the affirmative, plaintiff, upon the admissions and the testimony of defendant Roberts, would be entitled to a judgment against him and Donald's estate for such damages as the jury might award. Roberts' motion to nonsuit should have been overruled.

(2) Is the evidence sufficient to require jury determination of the asserted liability of Ball's estate for Rector's death? What has been said above disposes of that part of the question relating to the negligence of the operator of the motor vehicle. But to impose liability on Ball's estate, it was necessary for plaintiff to go further and offer evidence on which the jury could find that Ball was driving the automobile when the wreck occurred.

The evidence is sufficient for a jury to find these facts: Roberts last saw his son alive between 7:40 and 8:00 p.m. They were, at that time, some three miles south of Stines' Gulf. Donald was then driving. He was alone. Between 8:30 and 9:00 p.m., the car came to Stines' Gulf. Ball was driving. He purchased gas for the car. Rector and Donald were with him. They left, headed north. Ball was driving when they left.

About midnight, the three went to the home of Ball's fiancee, about 25 miles from Marshall. Ball was driving when they arrived. They left about 1:00 a.m. The car was next seen at Stines' Gulf; that was between 1:30 and 2:00 a.m. Ball was driving. He purchased more gas. The car headed north when it left Stines' Gulf. Ball was driving. About five minutes later, the car passed Stines' Gulf headed south. Ball was then driving. The car was "doing 60-65." It passed Robinson's Esso shortly thereafter "going 60-65." The witness who last saw it, when it passed Stines' Gulf, left a few minutes after the Chevrolet passed and went to the scene of the wreck. Two of the occupants were then dead. Rector was breathing, but died shortly thereafter.

We hold the evidence sufficient to require jury determination of the issues raised by the answer of the administrator of Ball's estate.

Reversed.