PEOPLES BANK & TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF GEORGE SPRITE BARBEE, JR., v. LONNIE GLENN SNOWDEN.

(Filed 6 July, 1966.)

**1. Automobiles § 41a—**

Negligence is not presumed from the mere fact of an accident, and the doctrine of *res ipsa loquitur* does not apply upon proof that the driver of a vehicle lost control and ran off the highway, but when there is some evidence, physical, direct, or a combination of both, sufficient to permit a fair inference that the loss of control of the vehicle was due to negligence, the evidence should be submitted to the jury.

**2. Same— Physical facts at scene, together with other evidence, held sufficient to be submitted to the jury on the issue of whether driver's loss of control was due to negligence.**

The evidence tended to show that the driver of the vehicle in which plaintiff's intestate was riding lost control of the vehicle, resulting in the accident causing death. The evidence tended to show that the accident occurred at a place where a four-lane highway narrowed into a two-lane

highway, that defendant's vehicle left tire marks on the shoulder to its right as though defendant had continued straight as the pavement narrowed to his left, and the physical facts at the scene tended to show that the vehicle was traveling at a high rate of speed. There was testimony that defendant stated after the accident that he became confused when he came to the narrowing of the road. *Held:* The evidence is sufficient to permit the inference that defendant lost control of the vehicle because of his speed and his failure to maintain a proper lookout, and judgment of involuntary nonsuit was erroneously entered.

MOORE, J., not sitting.

APPEAL by plaintiff from *Mintz, J.,* November 1965 Civil Session of PASQUOTANK.

Action for wrongful death.

It was established by stipulation that plaintiff's intestate, George Sprite Barbee, Jr. (Barbee), died instantly as a result of injuries sustained in the automobile accident in suit. Plaintiff alleges that the fatal upset was proximately caused by defendant's negligence in that he operated his vehicle at an excessive speed, without keeping it under proper control, and without keeping proper lookout. Plaintiff's evidence tended to show these facts:

On November 21, 1964, at about 2:15 a.m., Barbee was riding as a passenger in defendant's 1965 Ford automobile which he was driving in a southerly direction on U. S. Highway No. 17. Approximately two miles south of Elizabeth City, No. 17 changes from a four-lane to a two-lane highway. At this point there is a highway sign which says "Resume Safe Speed." The area immediately north of this sign is a 45 MPH speed zone. Defendant told Barbee's aunt, with whom intestate lived, that when "he came to the narrowing of the road it confused him, he became confused, and the car went off the road." The physical evidence at this spot was described by the investigating patrolman: One line of tire tracks appeared on the shoulder of the road just as the pavement began to narrow into two lanes, indicating that the driver had continued straight ahead while the pavement receded to the left. These tire markings were visible for a distance of 148 feet on the shoulder. They then swerved to the left and went southeastwardly across the pavement for 100 feet as two heavy black skid marks. It was "as if the car skidded and was beginning to turn sideways." (There were no skid marks on the pavement *north* of the place where the tire marks first appeared on the shoulder.) After crossing the east shoulder of the highway, the tracks went on for 227 feet, over two ditches, and finally plowing through and scattering a pile of concrete building blocks which had been stacked at a construction site. From the point where the tire marks first left the pavement to the place where defendant's Ford

came to rest on its top, the officer found a line of marks, debris, and "holes and scrapes" which measured 525 feet. The front of the automobile was pointing away from the pavement; the left door was open. Defendant was lying to the right rear of the automobile, 89 feet from the east edge of the pavement. Barbee's dead body was discovered off to the right of the vehicle.

On the night of the accident the weather was clear and cold. The asphalt pavement was smooth and dry. There were no eyewitnesses to the mishap, but a resident of the area, Mr. Wilbur Jordan, heard the noise of the accident. He testified that as he was preparing for bed he heard a series of metallic "bumping noises outside." The first noise appeared to be in his front yard. As it passed on, the bumping was "every now and then." There was one big noise. Mr. Jordan neither saw nor heard any other traffic until he got to the scene three or four minutes later. Robert Duhadaway, a motorist, traveling south on No. 17, stopped when he observed the lights of defendant's overturned car and saw a man running toward it. Mr. Duhadaway had entered No. 17 three-fourths of a mile north of the accident and had observed no traffic on the highway.

Prior to the accident defendant was in good health, not subject to fainting spells or blackouts. He had purchased his automobile new approximately six weeks before the accident; it was in excellent mechanical condition. The sales agency which had sold defendant the automobile bought it after the accident for salvage. Thereafter, the garage used certain parts from it, including the steering gear and "everything in the braking system except the right front wheel." Three of the tires were undamaged; the fourth had in it a clean cut four inches long. "It was not a blowout type puncture; it was a sharp object cut."

. At the conclusion of plaintiff's evidence, defendant's motion for judgment of nonsuit was allowed, and plaintiff appealed.

*LeRoy, Wells & Shaw by Dewey W. Wells and L. P. Hornthal, Jr., for plaintiff appellant.*

*Aydlett & White by Gerald F. White and Frank B. Aycock, Jr., for defendant appellee.*

SHARP, J. This appeal involves only the question whether plaintiff's evidence was sufficient to take the case to the jury on the issue of defendant's actionable negligence. It presents once again this frequently recurring situation to which there are no eyewitnesses: An automobile leaves the highway, upsets or collides with some object, and thereby causes personal injury or death. The doctrine of *res ipsa loquitur* is not applicable to such cases, for negligence is

not presumed from the mere fact that a vehicle veers off the highway. *Crisp v. Medlin,* 264 N.C. 314, 141 S.E. 2d 609; *Yates v. Chappell,* 263 N.C. 461, 139 S.E. 2d 728. Nevertheless, the physical facts can sometimes tell, more convincingly than could a witness, what occurred prior to the accident. " 'Evidence of actionable negligence need not be direct and positive. Circumstantial evidence is sufficient, either alone or in combination with direct evidence.' " *Randall v. Rogers,* 262 N.C. 544, 549, 138 S.E. 2d 248, 251. As Higgins, J., said in *Lane v. Dorney,* 252 N.C. 90, 92, 113 S.E. 2d 33, 34: "As a prerequisite to the presumption of driver responsibility, some evidence, physical, direct, or a combination of both, should be offered that other probable causes were absent, leaving the fair inference the accident resulted from the driver's negligence."

In *Lane v. Dorney, supra,* the driver of the automobile (Dorney) was going down hill on a long sweeping curve to the left. He failed to make the curve, ran off the road to the right over an embankment, and jumped a stream. The vehicle landed on its top and was completely demolished. The evidence disclosed that Dorney was "perfectly well." His vehicle was in good mechanical condition. The traveled portion of the highway was hard-surfaced, 18 feet wide, with dirt shoulders 3 feet wide. The surface was dry and free of defects. No other travelers were using the highway at the time and place of the accident. There was no evidence of a blowout. In reversing the trial court's judgment of nonsuit, this Court held that the plaintiff's evidence "tended to remove other possible contingencies, leaving the permissible inference that . . . (Dorney) was careless in the discharge of his duties to his passengers by failing to see the curve which he should have seen, or by failing to have his vehicle under such control as would enable him to keep it on the road. Failure in either particular would constitute negligence." *Id.* at 95, 113 S.E. 2d at 36-37. *Accord, Yates v. Chappell, supra; Randall v. Rogers, supra.*

The decision in *Lane v. Dorney, supra,* and the cases in line with it, control the decision here. The road was dry and free from defects. There was no other traffic on the highway at the time of the accident. Defendant's 1965 Ford, purchased new five to six weeks prior to the accident, was in good mechanical condition. After the accident, the steering mechanism and the brakes were found not to be defective; an examination of the tires negated a blowout. The defendant was in good health and was not subject to blackouts or fainting spells. The area immediately north of the place where defendant's automobile left the pavement is a 45 MPH speed zone. In addition to this evidence, plaintiff offered defendant's own admission that he was driving the automobile and also his explanation that

"when he came to the narrowing of the road it confused him, he became confused, and the car went off the road."

From the foregoing evidence, it is inferable that defendant, as he approached the narrowing of the road, failed to maintain a proper lookout and to keep his car under control; that he was driving at an excessive rate of speed when he ran off of the pavement; and that such conduct was a proximate cause of Barbee's death. *Drumwright v. Wood*, 266 N.C. 198, 146 S.E. 2d 1. As in *Lane v. Dorney, supra* at 94, 113 S.E. 2d at 36, plaintiff's evidence in the case at hand — viewed, as it must now be, in the light most favorable to plaintiff — "tends to remove everything that might have influenced the movement of the car, causing it to leave the road, save and except the hands of the man at the wheel."

Defendant relies upon the case of *Crisp v. Medlin, supra.* This case, however, is distinguishable from the case at bar. In *Crisp,* the plaintiff, *inter alia,* failed to offer sufficient evidence to warrant a finding that defendant's intestate was driving the automobile at the time of the fatal wreck.

The judgment of involuntary nonsuit was erroneously entered and is

Reversed.

MOORE, J., not sitting.