MELVIN C. NUNN, TRADING AS LIBERTY FARM AND GARDEN SUPPLY, v. J. I. SMITH.

(Filed 24 May, 1967.)

1. **Trial § 20—**
    While ordinarily the question of the sufficiency of the evidence to be submitted to the jury must be presented by motion to nonsuit, it is not error for the trial court on its own motion to grant nonsuit when the evidence would justify a directed verdict, G.S. 1-183, since the legal effect is the same.

**2. Damages § 10—**

Punitive damages may not be awarded merely for the giving of checks returned by the drawee bank marked insufficient funds, since punitive damages may not be allowed for simple fraud alone.                        .

**3. Execution § 17—**

Execution against the person will lie, G.S. 1-311, only when defendant has been lawfully arrested, or the complaint or affidavit alleges facts which would have justified an order of arrest, G.S. 1-410, and it is further necessary that such facts be judicially determined, since body execution will not lie solely upon plaintiff's allegations.

**4. Same—   Evidence held insufficient to support execution against the person.**                                                                          ;

Plaintiff obtained a judgment by default for the amount of two checks issued by defendant and returned by the drawee bank marked insufficient funds. Upon the inquiry plaintiff's evidence was solely that defendant had given him the checks and that plaintiff had given defendant cash and merchandise in the amount thereof, that the checks had thereafter been returned by the drawee bank marked insufficient funds, and that defendant promised to make the checks good but failed to do so. Plaintiff did not introduce the checks in evidence and offered no evidence as to when the checks were presented for payment or evidence that defendant did not have sufficient funds on deposit with the bank to pay the checks at the time of delivery or if presented within a reasonable time. *Held:* The evidence is insufficient to warrant execution against the person of defendant.

APPEAL by plaintiff from *Latham, S.J.,* 25 July 1966 Civil Session of RANDOLPH.

Plaintiff filed action alleging that on 3 July 1964 and on 14 July 1964 defendant executed and delivered to plaintiff checks in the amount of $144.50 and $190.00, respectively; that on both occasions defendant received from plaintiff merchandise and cash in return therefor; and that in due course these checks were presented to the drawee bank and were returned unpaid and marked "insufficient funds." Paragraph IV of plaintiff's complaint is as follows:

"That the plaintiff is advised, informed, believes and therefore alleges that on both July 3, 1964, and July 14, 1964, the defendant had insufficient funds on deposit on both occasions with which to pay either or both of said checks, and on both said occasions the defendant knew that he had insufficient funds on deposit but represented to the plaintiff that he did have sufficient funds on deposit with which to pay said checks, the defendant knowing at said time that said representation was false, and the defendant on each said occasion making said representation with the intention to commit fraud upon said plaintiff, and on each said occasion the plaintiff relied upon said repre-

sentation by giving the defendant merchandise and cash for said checks."

Plaintiff further alleged that defendant has failed to pay any of the amount due him as a result of these transactions, although plaintiff has made repeated demands for payment. Plaintiff prayed that he recover of defendant the sum of $334.50, with interest, that he recover $500 in punitive damages, and that he have body execution on defendant in the event judgment execution be returned unsatisfied.

On 25 January 1965 plaintiff was awarded actual damages in the amount of $334.50 by judgment of default final signed by the clerk of superior court. It was further ordered that an inquiry into the amount of punitive damages be executed at the next civil term of superior court of Randolph County to determine the amount of such damages, and for the jury to ascertain whether plaintiff is entitled to body execution of the defendant.

At the trial on the inquiry as to punitive damages and body execution, plaintiff offered in evidence the complaint, summons and judgment by default final. The remaining evidence offered by plaintiff was his own testimony, which was as follows:

"The defendant gave me a check on July 3, 1964, in the amount of $144.50, drawn upon the First-Citizens Bank and Trust Company of Greensboro. I have the check now. He also gave me another check on July 14, 1964, on the same bank, dated the same date, in the amount of $190.00. Upon my receiving these checks, he bought a little merchandise and wanted cash for the rest of the checks. I didn't ask him if these checks were good. We'd done business with him on previous occasions and I assumed that they were good. I gave him merchandise and cash for the checks each time. We ran the checks through the bank. I deposited them in First Union National Bank in Liberty. In due course, they came back 'Insufficient Funds.' After they came back for insufficient funds, I had occasion to talk to the defendant about these checks. I advised him that they had been returned for insufficient funds. He stated, 'I'll make them good.' But he never did. He did not suggest that I run them back through the bank, or that he had sufficient funds on deposit."

At the close of plaintiff's evidence the trial court, *ex mero motu*, awarded judgment of nonsuit. Plaintiff appealed.

*Gerald C. Parker for plaintiff.*
*No counsel contra.*

BRANCH, J.   Defendant was not present in court or represented by counsel and, of course, motion for nonsuit was not made at the close of plaintiff's evidence. Ordinarily, failure to make the motion amounts to a waiver. G.S. 1-183. However, it is not error for the court to enter a judgment as of nonsuit on its own motion when the evidence would justify a directed verdict, a nonsuit and directed verdict having the same legal effect. *Ferrell v. Insurance Co.*, 208 N.C. 420, 181 S.E. 327. And the court may direct a verdict against the party who has the burden of proof if the evidence offered, when taken as true, fails to make out a case. *Strigas v. Insurance Co.*, 236 N.C. 734, 73 S.E. 2d 788; *Arnold v. Charles Enterprises, Inc.*, 264 N.C. 92, 141 S.E. 2d 14.

Therefore, taking all of plaintiff's evidence as true, we must decide whether the trial court erred in refusing to submit to the jury the issue of punitive damages and the issue of whether plaintiff was entitled to execution against the person of defendant.

The trial judge correctly ruled in not submitting the issue of punitive damages to the jury.

In the case of *Swinton v. Realty Co.*, 236 N.C. 723, 73 S.E. 2d 785, plaintiffs, who were aged and uneducated Negroes, instituted action to recover damages for fraudulent misrepresentations as to the amount of land included in a lot purchased by them from defendants. The Court, holding that plaintiffs were not entitled to punitive damages in their action for fraud merely upon a showing of misrepresentations which constituted the cause of action, without more, said:

> ". . . '"Punitive damages" are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct.' . . .
>
> "In some cases, in actions to recover damages for fraud, where punitive damages are asked, it is suggested that a line of demarcation be drawn between aggravated fraud and simple fraud, with punitive damages allowable in the one case and refused in the other. In a note in 165 A.L.R. 616, it is said: 'All that can be said is that to constitute aggravated fraud there must be some additional element of a social behavior which goes beyond the facts necessary to create a case of simple fraud.' "
>
> "We are inclined to the view that the facts in evidence here are not sufficient to warrant the allowance of punitive damages. There was no evidence of insult, indignity, malice, oppression or bad motive other than the same false representations for which they have received the amount demanded."

See also *Horne v. Cloninger*, 256 N.C. 102, 123 S.E. 2d 112; *Lutz Industries, Inc., v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333.

Here, taking all plaintiff's evidence as true, the record is void of evidence of insult, indignity, malice, oppression or bad motive, and the facts upon which plaintiff would recover punitive damages are the same facts on which he bases his cause of action. Therefore, plaintiff cannot prevail.

G.S. 1-410 provides in what cases the defendant may be arrested in civil matters. The statute is divided into five sub-divisions, each specifying one or more classes of cases in which a defendant may be arrested. From an examination of the record, the right to arrest in the instant case is claimed by virtue of sub-division (4) of G.S. 1-410, which is as follows: "When the defendant has been guilty of a fraud in contracting the debt or incurring the obligation for which the action is brought, in concealing or disposing of the property for the taking, detention or conversion of which the action is brought, or when the action is brought to recover damages for fraud or deceit."

Article I, § 16, of the Constitution of North Carolina provides: "There shall be no imprisonment for debt in this State, except in cases of fraud."

This constitutional provision against imprisonment for debt has been held to apply to debt in the strict sense of an obligation arising out of contract, and hence would not apply to contracts involving fraud, including fraud in contracting the debt or incurring the obligation. *Melvin v. Melvin*, 72 N.C. 384.

An essential prerequisite to plaintiff's right to body execution is that, where there has not already been a lawful arrest under G.S. 1-410, the complaint or affidavit must allege such facts as would have justified an order for such arrest. G.S. 1-311. *Houston v. Walsh*, 79 N.C. 35. Plaintiff's complaint alleges a debt contracted by means of fraud, which is sufficient to support an order of arrest under G.S. 1-410(4).

G.S. 1-311 contemplates three classes whereby execution may be had on the body: (1) Where the cause of arrest does not appear in the complaint, but appears by affidavit. (2) Where the cause of arrest is set forth in the complaint, but is based on facts which are collateral and extrinsic to plaintiff's cause of action. (3) Where the facts showing the cause of arrest as set forth in the complaint are the same or essential to those on which plaintiff bases his cause of action. *Peebles v. Foote*, 83 N.C. 102. In the instant case, it appears that the facts alleged by plaintiff to show his cause of action and recover damages are the same as those on which he bases his cause

of arrest in order that he might have body execution. This is the situation contemplated in sub-division number three (3) above.

The judgment of default final entered by the clerk of superior court determined only that plaintiff was entitled to the amount of actual compensatory damages as represented by the total of the two checks, with interest thereon. The judgment specifically stated that the issue as to body execution was to be tried by jury in the superior court. In *Doyle v. Rush,* 171 N.C. 10, 86 S.E. 165, it is stated: "It was decided in *Ledford v. Emerson,* 143 N.C. 527, that an execution against the person cannot issue simply because of allegations in the complaint, and that the facts alleged entitling the plaintiff to such an execution must be passed upon and must enter into the judgment."

We must conclude that the trial judge entered judgment of nonsuit on the ground that the evidence elicited by plaintiff did not support the allegations contained in the complaint and therefore did not warrant submission to the jury.

The essential elements of actionable fraud are a definite and specific representation, which is materially false, made with knowledge of its falsity or in culpable ignorance of the truth, and with fraudulent intent, which representation is reasonably relied on by the other party to his damage. *Electric Co. v. Morrison,* 194 N.C. 316, 139 S.E. 455; *New Bern v. White,* 251 N.C. 65, 110 S.E. 2d 446.

Here, plaintiff depends solely upon the fact that two checks were issued and returned marked "Insufficient funds" to sustain his allegations of fraud. The act made criminal by G.S. 14-107 is *knowingly* putting worthless commercial paper in circulation. The drawing and delivery of a check to a third person, without more, is a representation that drawer has funds sufficient to insure payment upon presentation. And *if known to be untrue, is a false pretense.* *State v. Yarboro,* 194 N.C. 498, 140 S.E. 216; *State v. Cruse,* 253 N.C. 456, 117 S.E. 2d 49.

Plaintiff also depends upon the criminal statute 14-106, which provides as follows:

"Every person who, with intent to cheat and defraud another, shall obtain money, credit, goods, wares or any other thing of value by means of a check, draft or order of any kind upon any bank, person, firm or corporation, not indebted to the drawer, or where he has not provided for the payment or acceptance of the same, and the same be not paid upon presentation, shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned, or both, at the discretion of the court. *The giving of the aforesaid worthless check, draft, or*

*order shall be prima facie evidence of an intent to cheat and defraud.*" (Emphasis added)

It is stated in 5 Am. Jur. 2d, Arrest, § 56, p. 747:

"The test of the liability of a defendant to arrest under a statute authorizing arrest where the defendant has been guilty of a fraud in contracting a debt or incurring an obligation is the guilt of the defendant. There must have been a fraudulent purpose in contracting or incurring the liability, and this implies personal misconduct, moral or actual, not merely legal or constructive fraud. . . .

"Under a statute permitting arrest for fraud in contracting a debt, a promise to pay *may constitute fraud if coupled with a present intent not to pay. . . .*" (Emphasis ours).

The checks on which plaintiff bottoms his case are not a part of the record. He has offered no evidence as to when he presented the checks for payment. They could have been presented any time from their issuance in July 1964 until December 14, 1964. Plaintiff seems to have studiously avoided introducing the checks or giving evidence as to when the checks were deposited or as to whether defendant had sufficient funds on deposit with the bank to pay the checks at the time of delivery or if presented within a reasonable time. The records of the bank and its personnel were readily available for this purpose.

This Court recognizes that the acceptance of a check implies an undertaking of due diligence in presenting for payment; and if drawer sustains a loss because of lack of such diligence, *i.e.*, presentment within a reasonable time, it will operate as actual payment of the debt for which it is given. *Chevrolet Co. v. Ingle,* 202 N.C. 158, 162 S.E. 219. Since this rule applies in ordinary civil actions, *a fortiori* it would be applicable in the extra-ordinary cases of arrest and execution against the person.

In the case of *Melvin v. Melvin, supra,* an administrator was charged with misapplication of funds with which he was charged, without setting forth in the application how the funds had been misapplied. Holding that the clerk's order of arrest should be vacated, the Court said:

"The judgment of a creditor or distributee fixes him with assets, and if it be proved that he has the money in hand he will be ordered to pay the fund into Court; but suppose he is merely fixed with assets; and there is no telling from the pleading and affidavits whether he has embezzled the funds and put the money

into his own pocket or has lost the assets by negligence in failing to collect notes due to the estate, . . . it would be as hard a measure to treat him as a dishonest man, excluded, because of fraud, from the provision of the Constitution. . . .

". . . We have no proof of the charge, and our decision is, that an administrator, although fixed with assets which should be forthcoming, is not thereby found guilty of fraud so as to exclude him from the privilege of being exempted by the Constitution from being imprisoned for debt, and is not to be treated as a dishonest debtor."

It would be a harsh rule to label defendant dishonest and fraudulent so as to exclude him from the protection of Article I, Sec. 16 of the North Carolina Constitution, where plaintiff has failed to reasonably exclude other possibilities not indicative of fraud. "An inference must be based on some clear and direct evidence, it cannot be based on presumption, some other inference or surmise. . . . 'However confidently one in his own affairs may base his judgment on mere probability as to a proposition of fact and as a basis for the judgment of the court, he must adduce evidence of other than a majority of chances that the fact to be proved does exist. It must be more than sufficient for mere guess and must be such as tends to actual proof.'" *Powell v. Cross*, 263 N.C. 764, 140 S.E. 2d 393.

Plaintiff cannot depend on the terms of G.S. 14-107 to aid his case, since he fails to offer even a scintilla of evidence that defendant knowingly put worthless commercial paper into circulation, nor can he rely on the criminal statute 14-106, since he fails to prove that the checks were worthless when issued. The record does not show a conviction of the crime charged in either G.S. 14-106 or G.S. 14-107, nor would plaintiff's evidence in the record permit such conviction.

Plaintiff's evidence fails to support all of the essential elements of fraud "in contracting the debt or incurring the obligation for which the action is brought."

For reasons stated, the judgment entered by the court below is
Affirmed.