MAX C. GREENE, ADMINISTRATOR OF THE ESTATE OF MAXINE GREENE NICHOLS, DECEASED, v. GEORGE NICHOLS, ADMINISTRATOR OF THE ESTATE OF THOMAS LEE NICHOLS, DECEASED.

(Filed 14 June 1968.)

**1. Automobiles § 66—**

There is no presumption that the owner of an automobile who was in the vehicle at the time of a collision was the driver.

**2. Same—**

The identity of the driver may be established by evidence, direct or circumstantial, or by a combination of both.

**3. Same—**

Evidence that at the beginning of the trip the owner was seen driving his automobile, that a passenger was in the back seat and the owner's wife, who had no driver's license, was in the front seat on the passenger side, that five minutes later at the scene of the fatal accident the passengers were in their original position and the owner was on the ground beside the open door on the left side of the car, is sufficient to support a finding that the owner was the driver of the automobile at the time of the accident.

**4. Negligence § 29—**

Negligence need not be established by direct evidence but may be inferred from the attendant facts and circumstances, and if the facts proved establish the more reasonable probability that defendant has been guilty

GREENE *v.* NICHOLS.

of actionable negligence, the case cannot be withdrawn from the jury even though the possibility of accident may also arise on the evidence.

**5. Automobiles § 44—**

When an automobile leaves the highway without apparent cause and inflicts injury or damage, an inference of the driver's actionable negligence arises which will take the case to the jury, the doctrine of *res ipsa loquitur* being applicable.

**6. Same— Res ipsa loquitur raises inference of driver's negligence.**

Evidence tending to show that the driver of the automobile while attempting to negotiate a sharp curve to the right ran off the left side of the highway and collided head-on with a tree, killing himself and two passengers therein, and that the night was clear and the asphalt and gravel road was dry, *is held* sufficient to make out a *prima facie* case for the jury on the issue of the driver's negligence, the doctrine of *res ipsa loquitur* being applicable, even though there was no evidence negating the possibility of defects in the highway or the automobile, or that another person was negligent, or that the driver was in bad health.

**7. Same; Negligence § 6—**

Under the doctrine of *res ipsa loquitur*, the nature of the occurrence itself furnishes circumstantial evidence of driver-negligence.

**8. Death § 7—**

The wrongful death statute, G.S. 28-173, -174, does not allow nominal damages or permit the assessment of punitive damages.

**9. Same—**

Where plaintiff in a wrongful death action fails to show that his intestate had any earning capacity or that her untimely death resulted in a net pecuniary loss to her estate, judgment of nonsuit is properly entered.

**10. Same—**

Although it is not essential that direct, specific evidence be offered with reference to decedent's earning capacity, plaintiff does have the burden to offer some evidence tending to show that intestate was potentially capable of earning money in excess of that which would be required for her support.

PARKER, C.J., dissenting.

HIGGINS, J., joins in dissenting opinion.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Campbell, J.,* January 1967 Session of CALDWELL, docketed and argued at the Fall Term 1967 as Case No. 363.

Action for wrongful death.

Plaintiff's evidence tended to show: Plaintiff's intestate, Maxine Greene Nichols, was the 15-year-old wife of defendant's intestate,

Thomas Lee Nichols, a young man in his late teens or early twenties. Maxine had spent Saturday, 2 April 1966, at the home of her father in Valmead, Caldwell County. About 6 miles west of Valmead is Collettsville. Connecting the two communities is North Carolina Highway No. 90, an old road of asphalt and gravel — 18 feet wide. "This is a very crooked road, a lot of hills up and down, and some very sharp curves located in it." The speed limit for automobiles is 55 MPH.

At 12:35 a.m. on 3 April 1966, accompanied by Robert Wilson, a young man about his own age, Nichols came to the Greene home for Maxine in his 1957 2-door Chevrolet automobile. When they left at 12:40 a.m. to take Wilson to his home on Highway No. 90 toward Collettsville, Nichols was driving. Maxine, who did not have a driver's license, was in the front seat on the right, and Wilson was in the back seat.

At 12:45 a.m., Cecil Vines, traveling west on No. 90, rounded a sharp curve to the right and came upon the Nichols' wrecked Chevrolet, which was off the highway to his left. Vines had entered the old Collettsville Road from an intersection at Huffman's store, six-tenths of a mile from the scene of the accident. Just after he had made his turn at Huffman's store, an automobile, also going west, passed him. Thereafter he encountered no other traffic from either direction.

The Nichols' car had failed to make the curve. Approaching the curve, the road is slightly upgrade. The shoulder on the north is four feet wide; on the south, two feet. Head-on, the automobile struck the east side of a poplar tree, 24-30 inches in diameter, which was growing in the curve on the slope of the south bank of the road. The damage to the tree was severe; it began one foot from the ground and extended four feet up the trunk. The tree was about five feet from the hard surface, and its base was 2½-3 feet lower than the road. The car was about six feet below the tree and "it was tore all to pieces." Wilson was in the back seat. Maxine was in the front seat "on the passenger side about a foot from the door, which was closed." Nichols was on the ground between the car and the tree on the driver's side of the car. His head faced west; the car faced east. The door on the driver's side was open. The photographs introduced in evidence to illustrate the testimony show the automobile as a complete wreck — a tangled mass of parts, broken and shattered glass, its top bowed, and its body and frame bent and broken beyond repair. (Injury to the front tires is not apparent from the photographs.)

The wreck occurred 2.2 miles west of Lenoir, approximately 2½

miles east of Wilson's home and about 3½ miles from the Greene residence. At 12:50 a.m., Highway Patrolman L. E. Woods was called to investigate the accident, and he arrived at the scene at 1:10 a.m. The weather was clear and the road dry. Just east of the curve on which the car left the road was a yellow and black highway sign which warned of the curve. The officer found the Chevrolet about 15 feet from the edge of the road. There were no marks on the highway and none on the shoulder. The only impressions he saw were some slight scuff marks in the sand and dirt on the south edge of the road. These led toward the tree. The front end of the car was caved in backwards 1½-2 feet from the bumper. "[I]t was damaged from the center post forward, all parts of the windshield broken out, headlights broken out, grille caved in and inside of it the dashboard damaged, seats torn loose, a complete total loss." The patrolman "believed" both front tires were damaged. Nichols and Wilson had been removed from the car when the patrolman arrived. Maxine, who was dead, was still in the front seat on the right about a foot from the door.

The coroner of Caldwell County, Doctor Paul Moss, received notice of the wreck about 12:45 a.m. He went immediately to the emergency room of the Caldwell Memorial Hospital. There he found the occupants of the Nichols car. He examined the body of Maxine, which had been severely broken up. Her skull was fractured in numerous places. Her face was cut, bruised and out of shape; the lower jawbone was broken loose. Her abdomen was torn as if from a severe blow; there were deep bruises about the front part of the chest and numerous abrasions and bruises over the front of the body. Her pelvis and both legs were broken. The large leg bones between her knee and hip were protruding through the major part of the flesh in front of each leg. In the opinion of Doctor Moss, both Maxine and Wilson had died instantly. Wilson's body showed a deep bruise on the head; his left cheek was bruised and the abdomen full of fluid. Nichols was still alive when Doctor Moss arrived at the emergency room, but he died about an hour later from severe head and chest injuries.

In his complaint, plaintiff alleges Nichols' actionable negligence both generally and specifically. Plaintiff's specifications of negligence are that Nichols was operating the automobile without keeping a proper lookout, without having it under control, at a speed which was excessive in view of highway conditions, and on his left side of the highway. With reference to damages, plaintiff alleged only that his intestate "was a young woman 15 years of age enjoying excellent health and with a long life expectancy."

At the close of plaintiff's evidence, defendant's motion for nonsuit was granted. From judgment dismissing the action, plaintiff appeals.

*L. H. Wall and A. R. Crisp for plaintiff appellant.*
*Townsend and Todd for defendant appellee.*

SHARP, J. In considering defendant's motion for nonsuit three questions arise: Was plaintiff's evidence sufficient to support a finding (1) that Nichols was the driver of the automobile in which plaintiff's intestate met her death; (2) if so, that he operated the vehicle negligently, in the manner alleged in the complaint, thereby causing the death of his intestate; (3) that her death resulted in a pecuniary loss to her estate?

With reference to the first question, the evidence tended to show: Just before the fatal accident Nichols, driving his automobile, left the home of his father-in-law. Wilson was in the back seat, and Maxine, who had no driver's license, was sitting in the front seat on the passenger side. Five minutes later and 3½ miles away, when Vines came upon the wrecked automobile, Wilson and Maxine, both dead, were in the same positions in which they had begun the trip. Nichols was on the ground beside the open door on the left side of the car.

There is no presumption that the owner of an automobile who was in the vehicle at the time of a collision was the driver. *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258. However, direct evidence as to who was driving the automobile at the time it was wrecked is not required. The identity of the driver may be established by circumstantial evidence or by combination of direct and circumstantial evidence. *King v. Bonardi,* 267 N.C. 221, 148 S.E. 2d 32; *Drumwright v. Wood,* 266 N.C. 198, 146 S.E. 2d 1; *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492. Clearly, the jury could find from plaintiff's evidence that Nichols was operating his automobile at the time it left the highway and collided with the poplar tree. *Barefoot v. Holmes,* 267 N.C. 242, 147 S.E. 2d 883; *Yates v. Chappell,* 263 N.C. 461, 139 S.E. 2d 728; *Pridgen v. Uzzell,* 254 N.C. 292, 118 S.E. 2d 755; *Stegall v. Sledge,* 247 N.C. 718, 102 S.E. 2d 115; *Bridges v. Graham, supra.* The answer to the first question is YES.

The more difficult question is whether the physical facts at the scene of the collision provide sufficient circumstantial evidence to support plaintiff's allegations that Nichols' negligence as alleged in the complaint proximately caused the death of plaintiff's intestate. Direct evidence of negligence is not required; it may be inferred from the attendant facts and circumstances. "[I]f the facts proved

establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence." *Etheridge v. Etheridge,* 222 N.C. 616, 618, 24 S.E. 2d 477, 479; *Yates v. Chappell, supra.*

Plaintiff's evidence discloses these facts: The night was clear; the road was dry. The speed limit was 55 MPH, but the road was very crooked and hilly with very sharp curves. A highway sign warned Nichols, who was traveling west, that he was approaching a sharp curve. Furthermore, it is a fair inference from the evidence that Nichols was familiar with the road. On that curve, after crossing the eastbound lane and the south shoulder, he left the highway to collide head-on with a poplar tree five feet from the pavement. The automobile left no marks on the pavement or the shoulder. After the collision, the car spun around and came to rest 15 feet from the edge of the road. The tree was severely damaged; the vehicle demolished. The two passengers were killed instantly; the driver died soon thereafter.

In cases where a guest passenger (or his personal representative) has sued to recover damages sustained when the defendant's car left the highway for an unknown cause, the adjudications of this Court on the question of nonsuit have not been consistent, although each opinion states the same principles which purportedly governed decision. See 44 N. C. L. Rev. 1039 (1966). Almost invariably there is included an avowal that in North Carolina the doctrine of *res ipsa loquitur* is not applicable to automobile accidents.

In *Yates v. Chappell,* 263 N.C. 461, 139 S.E. 2d 728, the plaintiff's intestate was killed when the automobile in which he was a passenger collided with a bridge abutment on the shoulder of the road and stopped there. The abutment was cracked and the car "damaged all over." Approaching the bridge the road was downhill and curving to a point 250 feet from the bridge, from which it was straight and level. The speed limit there was 35 MPH. The pavement was dry, and there was no other traffic. The car left no tire marks on the pavement or shoulder. In reversing a judgment of nonsuit, the Court said that the doctrine of *res ipsa loquitur* did "not apply in tort cases involving the operation of motor vehicles" but that from the foregoing facts the jury could infer that at the time of the accident the driver was operating the automobile without keeping a proper lookout, without exercising proper control and at a speed which was excessive under the circumstances, and that his conduct was the proximate cause of the intestate's death. The court pointed out that there was *no evidence* of any object or imperfection in the highway,

of any mechanical failure of the car, or of any puncture or blowout of tires. Thus, the *absence of evidence* of these possible causes was considered as bolstering the probability of driver-negligence.

In *Whaley v. Marshburn*, 262 N.C. 623, 138 S.E. 2d 291, when the defendant-driver reached a curve to the left on a rural paved road as it approached a bridge over a creek, he failed to follow the curve, hit the shoulder, jumped the creek to the right of the bridge, and collided with a tree on the bank. This evidence was held sufficient to take the issue of the defendant's actionable negligence to the jury.

In *Lane v. Dorney*, the plaintiff's evidence tended to show: The driver was in good health, his automobile in good mechanical condition, and the highway was dry and free of defects. There was no other traffic on the road. Notwithstanding, in traveling downhill on a long sweeping curve to the left, the defendant's intestate failed to make the curve and ran off the road to the right. After leaving 22 feet of tire marks on the shoulder, the automobile hit a concrete bridge abutment, jumped a stream, and landed on its top completely demolished. Upon first consideration, a majority of this Court was of the opinion that the plaintiff had not made out a case because the doctrine of *res ipsa loquitur* was not applicable to automobile mishaps. The decision was that the trial court's judgment of nonsuit should be sustained. *Lane v. Dorney*, 250 N.C. 15, 108 S.E. 2d 55. The plaintiff's petition to rehear, however, was granted and the judgment of nonsuit reversed, although the Court still disavowed the applicability of *res ipsa loquitur*. *Lane v. Dorney*, 252 N.C. 90, 113 S.E. 2d 33.

Other cases holding that, without applying the doctrine of *res ipsa loquitur*, the attendant circumstances and physical facts at the scene were sufficient to establish driver-negligence when the automobile left the highway are: *Trust Co. v. Snowden*, 267 N.C. 749, 148 S.E. 2d 833; *Barefoot v. Holmes*, 267 N.C. 242, 147 S.E. 2d 883; *King v. Bonardi*, 267 N.C. 221, 148 S.E. 2d 32; *Drumwright v. Wood*, 266 N.C. 198, 146 S.E. 2d 1; *Rector v. Roberts*, 264 N.C. 324, 141 S.E. 2d 482; *Pridgen v. Uzzell*, 254 N.C. 292, 118 S.E. 2d 755; *Stegall v. Sledge*, 247 N.C. 718, 102 S.E. 2d 115; *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492. See also *Randall v. Rogers*, 262 N.C. 544, 138 S.E. 2d 248.

The following cases held the evidence insufficient to establish driver-negligence:

In *Ivey v. Rollins*, 250 N.C. 89, 108 S.E. 2d 63 (petition to rehear denied, 251 N.C. 345, 111 S.E. 2d 194), a 14-year-old boy, driving a car with sensitive power steering at 30-35 MPH on a straight, dry

road on a clear day, suddenly veered to his right and collided head-on with a bridge abutment. There were no skid marks and no noise except the sound of the impact. The occupants of the car — the driver, his mother, father, 4-year-old brother and the family dog — died in the collision. The trial judge's judgment of nonsuit was affirmed. Thereafter the petition to rehear was denied on the ground that "under our decisions the doctrine of *res ipsa loquitur* is not applicable in this case." *Ivey v. Rollins*, 251 N.C. 345, 111 S.E. 2d 194. It is noted that the opinions in *Lane v. Dorney* and *Ivey v. Rollins* were filed on the same day, 8 April 1959. The petition to rehear *Ivey* was denied 2 December 1959; the petition to rehear *Lane* was granted 2 March 1960.

In an attempt to distinguish *Ivey v. Rollins* from *Lane v. Dorney*, the Court said in *Lane* that in *Ivey* there was "nothing from the inside of the car, or from the outside of the car for that matter, from which we may ascertain what occurred at the time of the accident." *Lane v. Dorney*, 252 N.C. 90, 94, 113 S.E. 2d 33, 36.

In *Fuller v. Fuller*, 253 N.C. 288, 116 S.E. 2d 776, the defendant's intestate was operating the pickup truck on a straight, dry road in the daytime at a speed of 35-40 MPH. The truck gradually veered to the left, ran off the pavement and onto the shoulder for 75 feet before proceeding into a field about 2 feet below the highway. It continued in a straight line for about 150 feet and struck a cedar tree. The truck was demolished; the plaintiff, a passenger, was injured and the driver killed. In affirming the judgment of nonsuit upon the authority of *Ivey v. Rollins, supra*, the Court said: "The cause of the accident rests in the realm of speculation and conjecture." *Id*. at 289, 116 S.E. 2d at 777.

In *Privette v. Clemmons*, 265 N.C. 727, 145 S.E. 2d 13, the plaintiff was a guest passenger in the defendant's automobile. She fell asleep and awoke when the car ran onto the right shoulder and then into the ditch, where it went approximately 23 yards before stopping. The road was straight and level at the place the car left the pavement. Before the plaintiff fell asleep the car was running at a moderate speed, about 55 MPH. The defendant's motion for nonsuit was sustained under the authority of *Fuller v. Fuller* and *Ivey v. Rollins, supra*.

Had plaintiff offered evidence in this case that on the night of the collision Nichols' car was in good mechanical condition and that Nichols was in good health with no history of sudden seizures, it might be said — as the Court did in *Lane v. Dorney, supra* at 94, 113 S.E. 2d at 36 — that plaintiff's evidence "tends to remove everything that might have influenced the movement of the car, causing it.

to leave the road, save and except the hands of the man at the wheel." Plaintiff, however, offered no evidence on either of these points. The great damage to the tree, the destruction of the car, and the nature of the injuries which killed the occupants are certainly consistent with excessive speed. However, great damage to person and property can be expected when an automobile collides with a stationary object such as a large tree or a bridge abutment at a lawful rate of speed. The damage here was not materially different from that shown in *Ivey v. Rollins, supra,* and is comparable to that in *Fuller v. Fuller, supra.*

If the decisions in *Ivey v. Rollins, Fuller v. Fuller,* and *Privette v. Clemmons, supra,* continue authoritative, affirmance of the trial court's judgment of nonsuit is here required. The principal difference between this case and those three is that in the cited cases the road was straight. It cannot be said, however, that when a motorist runs off a straight road no inference of driver-negligence arises but that when he leaves the highway on a curve such an inference does arise.

We think that the decisions of *Ivey v. Rollins, Fuller v. Fuller, Privette v. Clemmons, supra,* are inconsistent with common experience. It is generally accepted that an automobile which has been traveling on the highway, following "the thread of the road," does not suddenly leave it if the driver uses proper care. Such an occurrence is an unusual event when the one in control is keeping a proper lookout and driving at a speed which is reasonable under existing highway and weather conditions. An automobile being operated with due care and circumspection "in the absence of some explainable cause, will remain upright and on the traveled portion of the highway." *Etheridge v. Etheridge,* 222 N.C. 616, 621, 24 S.E. 2d 477, 481. The inference of driver-negligence from such a departure is not based upon mere speculation or conjecture; it is based upon collective experience, which has shown it to be the "more reasonable probability." Highway defects or the negligence of another could cause a car to leave the road. The presence of either of these causes, however, would ordinarily be apparent. Mechanical defects in the vehicle or driver-illness could cause an automobile to leave the road, but these possible causes occur comparatively infrequently and their probability can ordinarily be negated. "Vast improvements have been made in automotive machinery since the days of the gasoline buggy with regard to reliability and uniformity of performance. Meantime, the factors of human conduct have remained substantially the same." *Boone v. Matheny,* 224 N.C. 250, 253, 29 S.E. 2d 687, 689.

When a motor vehicle leaves the highway for no apparent cause, it is not for the court to imagine possible explanations. *Prima facie,*

it may accept the normal and probable one of driver-negligence and leave it to the jury to determine the true cause after considering all the evidence — that of defendant as well as plaintiff.

Under this rationale, which we adopt, plaintiff made out a *prima facie* case of actionable negligence, and the answer to question 2 is YES. In giving an affirmative answer to this question we have applied the doctrine of *res ipsa loquitur,* which simply means that the nature of the occurrence itself furnishes circumstantial evidence of driver-negligence. *Young v. Anchor Co.,* 239 N.C. 288, 79 S.E. 2d 785; *Springs v. Doll,* 197 N.C. 240, 148 S.E. 251; *Ridge v. R. R.,* 167 N.C. 510, 83 S.E. 762. See *Kekelis v. Machine Works,* 273 N.C. 439, 160 S.E. 2d 320. Defendant's intestate was in control of the vehicle which left the highway on a curve. It is unusual for an automobile to leave the highway. When it does so without apparent cause and inflicts injury or damage, an inference of the driver's actionable negligence arises, which will take the case to the jury. The inference of negligence does not arise from the mere fact of injury; it arises from the manner in which it occurred. *Hebert v. Allen,* 241 Iowa 684, 41 N.W. 2d 240.

The application of the doctrine of *res ipsa loquitur* to this factual situation is the general rule. See Annot: Applicability of *res ipsa loquitur* doctrine where motor vehicle leaves road, 79 A.L.R. 2d 6 (1961), in which the cases are collected and wherein it is said: "Automobile accidents . . . happen under a large variety of circumstances which as a rule involve the fault of more than one person and the cases are rare in which only one inference may be drawn from the happening as being more plausible than others. Consequently, automobile accidents, taken as a group, do not represent the typical occurrence to which the *res ipsa loquitur* doctrine applies. However, there is no doubt but that the doctrine may be applied to an automobile accident if a proper case is presented. In other words, the mere fact that the occurrence is an automobile accident does not *ipso facto* exclude the availability of the doctrine. . . . Among the various types of automobile accidents there is at least one in which the *res ipsa loquitur* doctrine has been applied with appreciable consistency. Where a motor vehicle leaves the roadway without a prior collision and thereby causes injury or damage, the courts, as a general rule, are prepared to draw an inference of negligence from the occurrence, assuming, of course, that all the other conditions of applicability are met." *Id.* at 18. See 8 Am. Jur. 2d *Automobiles and Highway Traffic* §§ 921-924 (1963) for a discussion of the situations in which *res ipsa loquitur* has been applied in motor-vehicle-accident cases.

As pointed out in Prosser, Torts 218-19 (3d ed. 1964): The requirement for the application of the doctrine of res ipsa loquitur "that the occurrence be one which ordinarily does not happen without negligence is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to an inference that some one must have been negligent. On this basis res ipsa loquitur has been applied to a wide variety of situations, and its range is as broad as the possible events which reasonably justify such a conclusion. It finds common application, for example, in . . . some kinds of automobile accidents, such as a car suddenly leaving the highway and going into the ditch or colliding with a stationary object, or starting down hill not long after it has been parked at the curb."

Although we hold that plaintiff's evidence is sufficient to take the case to the jury on the issue of Nichols' actionable negligence, the judgment of nonsuit must be sustained because the answer to the third question is No. Plaintiff failed to show that his intestate had any earning capacity or that her untimely death resulted in a net pecuniary loss to her estate. Plaintiff's evidence tended to show only that Maxine was 15 years old, married, and able to travel by automobile. Plaintiff offered no evidence with reference to her health, intelligence, training, education, aptitudes, or habits. No doubt, however, such evidence was available.

Our wrongful death statute, G.S. 28-173, -174, does not allow nominal damages or permit the assessment of punitive damages. Armentrout v. Hughes, 247 N.C. 631, 101 S.E. 2d 793. The burden is on plaintiff to prove that the estate of his intestate suffered a net pecuniary loss as a result of her death. Scriven v. McDonald, 264 N.C. 727, 142 S.E. 2d 585; Lamm v. Lorbacher, 235 N.C. 728, 71 S.E. 2d 49. See also Gay v. Thompson, 266 N.C. 394, 146 S.E. 2d 425.

In Hines v. Frink, 257 N.C. 723, 127 S.E. 2d 509, an action for wrongful death in which this Court sustained a judgment of nonsuit, it was said that no discussion of negligence or proximate cause was necessary because plaintiff had offered no evidence as to the age, health, habits, or earning capacity of his intestate. Had the issue of negligence been submitted in that case, the judge would have been required to instruct the jury that plaintiff "had offered no evidence tending to show any pecuniary loss resulting to the estate of [intestate] from his death, and that it should answer the issue of damages, on which he had the burden of proof, NOTHING. Hence, the judgment of nonsuit was proper." Id. at 728, 127 S.E. 2d at 513. Accord, Nunn v. Smith, 270 N.C. 374, 154 S.E. 2d 497; Spruill v.

*Insurance Co.,* 120 N.C. 141, 148, 27 S.E. 39, 42. See *Roberts v. Freight Carriers, Inc.,* 273 N.C. 600, 160 S.E. 2d 712; McIntosh, N. C. Practice and Procedure § 1516 (2d ed. 1956 and 1964 Supp.). Even in *Russell v. Steamboat Co.,* 126 N.C. 961, 36 S.E. 191, a case in which the recovery of $1,000.00 for the death of a five-month-old boy was affirmed, evidence was offered that the child "had never been sick."

Although it is not essential that direct, specific evidence be offered with reference to decedent's earning capacity, *Reeves v. Hill,* 272 N.C. 352, 158 S.E. 2d 529; *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394, it is required that plaintiff offer some evidence tending to show that intestate was potentially capable of earning money in excess of that which would be required for her support. See also *Cox v. Shaw,* 263 N.C. 361, 139 S.E. 2d 676; *In re Estate of Ives,* 248 N.C. 176, 102 S.E. 2d 807; *Davenport v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203.

The judgment of nonsuit is
Affirmed.

HUSKINS, J., took no part in the decision or consideration of this case.

PARKER, C.J., dissenting: The common law recognizes no right of action for wrongful death. A right of action for wrongful death exists in this State by virtue of G.S. 28-173 *et seq.* This Court, in *Reeves v. Hill,* 272 N.C. 352, 158 S.E. 2d 529, stated: "Nor is it essential that direct evidence of the earnings of a deceased adult be offered in order for there to be recovery of damages. Evidence of his health, age, industry, means and business are competent to show pecuniary loss." The evidence shows that Maxine Greene Nichols, at the time of her death, was a 15-year-old wife. There is nothing to show that she was in bad health. "Soundness of mind is the natural and normal condition of men, and therefore everyone is presumed to be sane until the contrary is made to appear." *S. v. Harris,* 223 N.C. 697, 28 S.E. 2d 232. Nothing in the record shows that Maxine Greene Harris at the time of her death was not of sound mind.

The realistic trend of the modern decisions recognizes the fact that a wife, as an individual, has a personal right to work and earn money, whether she is gainfully employed or not at the time or engaged merely in the performance of household duties; and, where a 15-year-old wife has been wrongfully killed, her estate has suffered a definite, substantial pecuniary loss. This is particularly true in view of the fact that married women in increasing numbers are engaging in business pursuits and employments as do men, and, like men, whether so employed or not, have a potential capacity to la-

bor and earn money. *Johnson v. Lewis,* 251 N.C. 797, 112 S.E. 2d 512; Annot. 151 A.L.R. 511.

In *Russell v. Steamboat Co.,* 126 N.C. 961, 36 S.E. 191, the Court sustained a verdict of $1,000 damages for the wrongful death of a child five-months old. The Court in its opinion said:

> "There is another view of the question that forces itself upon our minds which perhaps we are not called on to consider, but unless forced to do so by the overwhelming weight of authority or the inexorable logic of legal conclusion, we would be reluctant to admit that a human life, however lowly or feeble, had no value in the contemplation of a common carrier. Even a new-born colt or calf has an actual value entirely dependent upon its future usefulness or salability. It is a matter of common knowledge that during the days of slavery a healthy negro child, even at the breast, was considered as worth at least $100. Let us consider the contrast. A helpless negro baby, lying upon the floor along which he could not crawl, and born to a state of hopeless bondage, was worth to the owner at least $100 as a chattel; and yet another baby, with generations of inherent qualities behind him and the magnificent possibilities of American citizenship before him, is not worth to himself, or to the country whose destinies he might one day have shaped, even the penny necessary to carry the cost. This view is entirely too incongrous to strike our fancy.

> "Upon the greater and better weight of authority, as well as our own convictions of natural justice and of public policy, we are constrained to hold that the plaintiff can recover substantial damages in the case at bar."

In *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793, 69 A.L.R. 2d 620, the Court by a divided vote denied recovery. In that case plaintiff's complaint alleged that his deceased intestate at the time of her death was 80 years of age.

In *Scriven v. McDonald,* 264 N.C. 727, 142 S.E. 2d 585, the recovery was denied for the wrongful death of an eleven-year-old boy. Plaintiff's evidence and other portions of Dr. Mangum's testimony not in conflict therewith showed that the boy, from birth until death, was mentally retarded and thereby severely handicapped. He could not fasten buttons. He could put on his shoes but could not tie them. In closing its opinion, the Court used this language:

> ". . . Absent substantial evidence, medical or otherwise, tending to show a reasonable probability Anthony could or might overcome his handicap, the only reasonable conclusion to

be drawn from the evidence is that he would continue to be a dependent person rather than a person capable of earning a livelihood. The burden of proof is upon plaintiff to show pecuniary loss to the estate on account of Anthony's death. In our view, plaintiff's evidence negatives rather than shows such pecuniary loss."

The case of *Stetson v. Easterling*, 274 N.C. 152, 161 S.E. 2d 531, filed this date, is an action for damages for wrongful death. A demurrer to the complaint was sustained on the ground that plaintiff's allegations were insufficient to show that the estate of his intestate has suffered pecuniary loss on account of the death of his intestate. Plaintiff alleged: "John Edward Stetson could not swallow and therefore had to be fed by the use of a tube. That a thick mucus formed in and about the mouth and nose and had to be removed by the use of a suction device, and the baby had no eye blink." That decision is sound.

In an endeavor to distinguish this case from *Russell v. Steamboat Co., supra,* the majority opinion says that the plaintiff offered evidence that this five-months-old boy "had never been sick." In my opinion there is a reasonable inference of fact that a 15-year-old woman who marries is in good health. It would be unrealistic to believe that a man would marry a 15-year-old girl who was a bedridden invalid.

The majority opinion states this: "In *Hines v. Frink*, 257 N.C. 723, 127 S.E. 2d 509, an action for wrongful death in which this Court sustained a judgment of nonsuit, it was said that no discussion of negligence or proximate cause was necessary because plaintiff had offered no evidence as to the *age,* health, habits, or earning capacity of his intestate." (Emphasis mine.) In the instant case we have proof that Maxine Greene Nichols was 15 years of age.

The majority opinion cites in support of its position *Nunn v. Smith*, 270 N.C. 374, 154 S.E. 2d 497. As I read that case, it was not an action for damages for wrongful death and is not remotely relevant to this case.

The majority opinion cites *Spruill v. Insurance Co.*, 120 N.C. 141, 148, 27 S.E. 39, 42. That was an action to recover the amount of a life insurance policy and the question of suicide was involved. As I read the case, the principles of law there laid down have no relevancy with the instant case.

The majority opinion cites *Roberts v. Freight Carriers, Inc.*, 273 N.C. 600, 160 S.E. 2d 712. That case involved an action for property damages arising out of a collision between plaintiff's dump truck

and defendant's tractor-trailer. As I read the case, it has no relevancy whatever in respect to the instant case.

2 McIntosh, N. C. Practice and Procedure, § 1516, cited in the majority opinion, is in respect to directing a verdict.

The majority opinion states that plaintiff has offered sufficient evidence to carry the case to the jury that Nichols was the driver of the automobile in which plaintiff's intestate met her death, and that Nichols was guilty of actionable negligence in causing her death. In the instant case, considering plaintiff's evidence in the light most favorable to him and giving to him every reasonable inference of fact to be drawn therefrom, it would permit a jury to find that defendant's actionable negligence in operating an automobile wrongfully and unlawfully killed a 15-year-old married woman; that, nothing appearing to the contrary, she was presumed to be sound of mind, and that under the conditions of modern society with most women working a reasonable inference of fact could be found by the jury that she was healthy and capable of earning money. In my opinion, the plaintiff offered sufficient evidence tending to show that his intestate was potentially capable of earning money in excess of that which would be required for her support, and I vote to send the case to the jury.

The defendant has won a Pyrrhic victory for the simple reason that all the plaintiff has to do to carry his case to the jury is to institute in apt time another suit and sufficiently allege and prove on the trial that his intestate was in good health and able to earn money.

HIGGINS, J., joins in the dissenting opinion.