A. L. POPLIN, ET UX v. P. L. LEDBETTER

No. 6919SC380

(Filed 17 September 1969)

**1. Damages § 11— worthless check — punitive damages — aggravated fraud — sufficiency of evidence**

In plaintiffs' action to recover actual and punitive damages on the ground that defendant had fraudulently given plaintiffs a worthless check in the amount of $1400 in order to induce plaintiffs to convey to a third party a lot upon which defendant had built a house, the evidence *is held* insufficient to be submitted to the jury on the issue of punitive damages, there being no evidence upon which to support a finding of aggravated fraud.

**2. Damages § 11— punitive damages — fraud**

In order to award punitive damages in an action for fraud, the defendant's fraudulent conduct must contain the additional elements of insult, indignity, malice, oppression or bad motive.

APPEAL by defendant from *Crissman, J.,* 13 January 1969 Regular Civil Session of the Superior Court of CABARRUS County.

The plaintiffs, A. L. Poplin and wife, Callie Poplin, (Poplin), brought this action on 5 February 1968 in the Superior Court of Cabarrus County for actual damages in the sum of $1,400 and punitive damages in the sum of $10,000, alleging that the defendant, P. L. Ledbetter, (Ledbetter), had been guilty of fraud in giving a worthless check in the amount of $1,400.00 to Poplin to induce him to convey a lot which he and his wife owned to one Hastings upon which Ledbetter had built a house. Poplin alleged that on 15 April 1965 he and his wife actually deeded the lot to Hastings upon the request of Ledbetter in exchange for the $1,400.00 check dated 15 April 1965. Poplin further alleged that when Ledbetter gave him the check he knew or ought to have known that he did not have sufficient funds on deposit in the bank to pay the check, and that Ledbetter intended to deceive and defraud Poplin by the false representation, and further that Poplin did in fact rely upon the false representation in conveying the lot to Hastings to his injury and damage.

At the trial, the plaintiffs offered evidence tending to show that on 15 April 1965 they were the owners of a certain lot in Cabarrus County upon which the defendant, Ledbetter, had built a house and that Poplin had given the lot as security to enable Ledbetter to get a construction loan in the amount of $6,000.00. The evidence further tended to show that Ledbetter had negotiated to sell the house to one Hastings and that he gave a $1,400.00 check to Poplin dated

15 April 1965 to get Poplin and his wife to convey the lot to Hastings on 15 April 1965. Poplin testified that he presented the check for payment "a couple of days" after he received it and that it was charged back to his account about 10 days later because Ledbetter did not have sufficient funds on deposit to pay the check, and that although he had made demand upon Ledbetter for the $1,400.00 he had never been paid any part of it. The plaintiffs' evidence further tended to show that on 15 April 1965 Hastings closed a loan at the Cabarrus County Savings and Loan Association in the sum of $12,-900.00 giving the house and lot as security for the loan, and that the proceeds of the loan were paid to Ledbetter. The $1,400.00 check dated 15 April 1965 given by Ledbetter to Poplin was offered and admitted into evidence along with evidence tending to show that at no time during the month of April did Ledbetter have on deposit in the bank on which the check was drawn sufficient funds to cover the said check.

The defendant, Ledbetter, offered no evidence and moved for a judgment as of nonsuit at the close of the plaintiffs' evidence. The court overruled the defendant's motion and submitted the case to the jury on the following issues:

"1. What amount, if any, are the plaintiffs entitled to recover from the defendant for actual damages?

"2. Did the defendant represent to the plaintiffs that he had on deposit the sum of One Thousand Four Hundred ($1,-400.00) Dollars at the time of the delivery of the check offered as plaintiffs' Exhibit 'A'?

"3. If, so, did the defendant know that he did not have One Thousand Four Hundred ($1,400.00) Dollars on deposit?

"4. If so, did the defendant intend for the plaintiffs to rely upon the representation?

"5. If so, did the plaintiffs reasonably rely upon the representation of the defendant?

"6. If so, what amount, if any, are the plaintiffs entitled to recover of the defendant for punitive damages?"

During the course of the trial the parties stipulated that the court instruct the jury to answer the first issue $1,400.00. The jury answered all of the issues in favor of the plaintiffs and assessed punitive damages against the defendant in the sum of $2,500.00. The court entered judgment that the plaintiffs recover of the defendant $1,-400.00 with interest as actual damages, and $2,500.00 as punitive

damages and further ordered that if execution against the property of the defendant be returned either wholly or partially unsatisfied, execution be issued against the person of the defendant and he be committed to the common jail of Cabarrus County until he pays the judgment herein or until he is discharged according to law. The defendant, Ledbetter, appealed assigning error.

*Cole and Chesson, by James L. Cole, for the defendant-appellant.*

*Hartsell, Hartsell and Mills, by William H. Mills, Jr., and K. Michael Koontz, for the plaintiffs-appellees.*

HEDRICK, J.

[1]    The appellant's assignments of error numbers 1, 2, 3, 4, 5, 29 and 30, challenge the sufficiency of the plaintiffs' evidence to carry the case to the jury on the issue of punitive damages.

In *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d. 202, the Supreme Court of North Carolina, speaking through Johnson, J., said:

> "Fraud has no all-embracing definition. Because of the multifarious means by which human ingenuity is able to devise means to gain advantages by false suggestions and concealment of the truth, and in order that each case may be determined on its own facts, it has been wisely stated 'that fraud is better left undefined,' lest, as *Lord Hardwicke* put it 'the craft of men should find a way of committing fraud which might escape a rule or definition.' *Furst v. Merritt*, 190 N.C. 397 (p. 404), 130 S.E. 40."

In *Swinton v. Realty Co.*, 236 N.C. 723, 73 S.E. 2d. 785, Chief Justice Devin, writing for the Court, said:

> "In some cases, in actions to recover damages for fraud, where punitive damages are asked, it is suggested that a line of demarcation be drawn between aggravated fraud and simple fraud, with punitive damages allowable in the one case and refused in the other. In a note in 165 A.L.R. 616, it is said: 'All that can be said is that to constitute aggravated fraud there must be some additional element of asocial behavior which goes beyond the facts necessary to create a case of simple fraud.' "

Upon this appeal we are not concerned with whether the defendant's conduct amounted to simple fraud. Rather, we must examine the evidence in its light most favorable to the plaintiffs to determine whether Ledbetter's conduct in giving the $1,400.00 check, with all of the attendant circumstances, constituted what has been referred

to in some cases as aggravated fraud, subjecting him to the additional punishment of punitive damages.

**[2]** In *Swinton v. Realty Co., supra,* and in *Nunn v. Smith,* 270 N.C. 374, 154 S.E. 2d. 497, our Supreme Court indicated that before punitive damages might be assessed, the defendant's fraudulent conduct must contain the additional elements of "insult, indignity, malice, oppression or bad motive". We are inclined to the view that these are the "elements of asocial behavior" referred to in 165 A.L.R. 616 which change simple fraud to aggravated fraud.

**[1]** There is no showing that there was any prior business relationship between Ledbetter and Poplin unless such an inference can be gleaned from Poplin's statement that "he just gave me the check like he always had, if he ever gave me one, and I took it for granted he had it there." We believe that this statement, standing alone, is not sufficient to infer any prior business association, and this is especially true since, if this had existed, the plaintiffs could have easily elicited this evidence from any of the witnesses available to them, and the appellees' contention to the contrary seems without merit. The fact that Poplin had given the lot as security so that Ledbetter could obtain a construction loan does not, of itself, infer that the plaintiffs and defendant were engaged in a joint venture. On the other hand, it does indicate that Poplin knew that at the time he accepted the check and conveyed the lot to Hastings, that the lot was encumbered at least in the amount of $6,000.00. The additional evidence to the effect that Hastings closed his $12,900.00 loan on the very day that the check was dated and the deed executed could give rise to the inference that Poplin had good reason to wait "a couple of days" before he presented the check for payment. We believe that all of this evidence with respect to the circumstances attendant to the giving of the check tend to negate the essential elements constituting aggravated fraud.

In *Nunn v. Smith, supra,* where the facts were remarkably similar, the Court in affirming the judgment of nonsuit said: "Here, taking all plaintiff's evidence as true, the record is void of evidence of insult, indignity, malice, oppression or bad motive, and the facts upon which plaintiff would recover punitive damages are the same facts on which he bases his cause of action. Therefore, plaintiff cannot prevail." We have examined the plaintiffs' evidence and conclude that the court ought not to have submitted the issue of punitive damages to the jury.

For the reasons herein set forth, that part of the judgment allowing punitive damages and providing for the arrest of the defend-

ant is reversed, and that part of the judgment that the plaintiffs recover of the defendant $1,400.00, with interest and cost, is affirmed. The result is

Reversed in part.

Affirmed in part.

MALLARD, C.J., and MORRIS, J., concur.